Booth, Judge,
delivered the opinion of the court:
The plaintiff was a Government employee in the classified service. On January 2, 1920, he was offered a position in the Rehabilitation Division, Federal Board for Vocational Training. Immediately after the receipt of this offer he secured a month’s leave of absence without pay from the *151 War Department, where he Fas then working, accepted the above offer, and proceeded to Dallas, Texas, and reported for duty,'resigning his position in the War Department on January 20, 1920, to take effect February 2, 1920. The Director of the Dallas Division of Rehabilitation first assigned the plaintiff to field service. Subsequently it was found inexpedient’ to continue him in this particular work, and he wa-s transferred to the district office for office work. Proving inefficient in office work, the director assigned him to answering general correspondence from trainees and prospective trainees, in which task he became quite proficient. On July 1, 1920, the need for the plaintiff’s services in this respect ceased, and he was verbally notified on July 12, 1920, that on and after July 15, 1920 — afterwards extended to July 21, 1920 — on account of reduction in force and lack of work his services would be no longer needed and he would be dropped from the rolls. Plaintiff vigorously protested against the order, wired his protest to the Washington (D. C.) officials, and supplemented the telegram with a letter to like effect. Not only did he protest against the proceedings but he requested a travel order to come to Washington and be granted the privilege of laying his complaints before the Federal Board for Vocational Education. On July 13, 1920, Director Lamkin, from Washington, advised the district officer in Texas by wire that the plaintiff’s request for transportation from Dallas to Washington could not be allowed; that it was not possible to transfer him from Texas; and that his resignation without prejudice would be accepted. This message was duly received by the plaintiff. On July 20, 1920, the plaintiff received from the Federal board in Washington a formal letter accepting his resignation without prejudice and separating him from the service on July 21, 1920. The plaintiff replied to this letter positively denying having tendered or offered to tender his resignation, requested a hearing upon the action taken to discharge him, and concluding his correspondence with a request for a transfer to some other division of the service.
Soon after this incident and probably about the middle of August the plaintiff arrived in Washington. He called on *152 one of the officials of the board and was allowed to and did submit a written statement wherein he criticized the personnel of the Dallas division of the board, criticized the work and all the surrounding conditions, as well as his separation from the service. On August 24, 1920, the plaintiff was granted a hearing before the standing committee of the board. At this time he personally appeared and was heard in his own behalf, as well as with regard to the serious charges he had made against the officials in charge of the Dallas division. He was even allowed to supplement in writing the previous accusations made by him upon his arrival in Washington. The standing committee sustained the action of the director in Dallas in requesting the resignation of the plaintiff and decided to investigate the charges he had made, and the plaintiff was duly notified to this effect.
The plaintiff, following the receipt of this information, and apparently for the first time, asserted a claim to certain individual members of the board for a rehearing of his case, predicating his appeal upon the fact that he had not been legally separated from the service in accord with the civil service act of August 24, 1912, 37 Stat. 555, not having received a formal written notice containing charges against him and given opportunity to reply thereto. The committee declined a reconsideration of his case, and on October 5, 1920, the plaintiff, through a United States Senator and a Representative in Congress from Texas, appealed to the Civil Service Commission, which in turn advised the board that the plaintiff should have received charges in writing and been given an opportunity to reply; that the board had better reinstate him in the service and observe the terms of the law. The board did not observe the admonition but sedulously contended that the plaintiff had been legally separated from the service.
The plaintiff made a final effort to be reinstated in the War Department, and did succeed in securing a request for Iris employment and assignment to duty at Galveston, Tex. He reported there on January 1, 1921, and after two days of temporary employment returned to Washington, having eventually failed to receive reinstatement in the service de *153 sired, since which time he has been practically without employment.
On October 17,1921, the plaintiff filed his petition herein, 1 year 2 months and 26 days after his separation from the service, setting up a cause of action predicated upon his alleged unlawful removal from office, and seeking the recovery of the salary of said office from the date of removal, and continuing judgments for monthly installments of the same until he is reinstated.
We have reviewed the facts somewhat in extenso. The determinate issue does not revolve around the emphasis put by the plaintiff on the fact that he did not resign, nor the erroneous assertion by the Federal board that his resignation was accepted. Manifestly the plaintiff did not resign, nor in the end was any final order of separation rested upon an assumption that he had resigned. Fie was. separated from the service by the director at Dallas because his services were no longer needed, the particular work which he was doing-having in a reorganization of the service been discontinued. The error as to his resignation obviously originated in a well-meant proposal upon the part of the Washington office to accept his resignation without prejudice in order to disclose a voluntary retirement from the service without prejudice to his securing employment in other branches of the Government service generally. The only pertinent inquiry which we might under any circumstances indulge is the failure of the officials to strictly obey the requirements of the civil service law heretofore cited. By the express terms of the statute written charges and an opportunity to reply are required. An officer removing a subordinate in the classified service is expressly enjoined to follow this procedure. It occurs to us, however, that such a requirement and the benefits of the statute, if the plaintiff chooses so to do, may be waived, and if he acts and conducts himself under the circumstances in such a way as to clearly imply an intent to do so, he may not complain as a last resort that the law in all its particulars has not been observed. The plaintiff in this case did not, in the first instance, invoke the statute in his behalf. On the contrary, he protested that he had not resigned, and wanted a hearing. This protest was heeded; *154 his appeal for a bearing Avas granted, and be received even more than the civil service law mandatorily provides, for under its terms be is entitled to no more than an opportunity to reply to the written charges filed unless in the discretion of the officer he rIIoavs a hearing. In this case the plaintiff Avas fully informed of the reasons for his dismissal; he appealed to the highest officials for a hearing, that was granted, and he Avas given the fullest opportunity and the very widest latitude in Avhich to present his case. He did not challenge the right of removal before the general committee. Indeed, he tried his case there upon its merits. If, as here contended for (to which we do not commit ourselves), the intent of the civil service law is to protect the classified employee from summary removal without an opportunity to reply to the reasons therefor, and the émployee is satisfied to accept oral charges and reasons and reply thereto orally and in writing, may he then in desperation, and as a last resort, for the first time insist upon the letter of the law? We think-not.
The language of the court in Shutte v. Thompson, 15 Wall. 151, 159, in apropos:
“A party may waive any provision, either of a contract or of a statute, intended for his benefit. If, therefore, it appears that the plaintiff in error did Avaive his rights under the act of Congress — if he did practically consent that the deposition should be taken and returned to the court as it was — and if by his waiver he has misled his antagonist — if he refrained from making objections known to him, at a time when they might have been removed, and until after the possibility of such removal had ceased, he ought not to be permitted to raise the objections at all. If he may, he is allowed to avail himself of what is. substantially a fraud.”
See also Mullan v. United States, 212 U. S. 516.
In the case of (O'Neil v. United States, 56 C. Cls. 89, we had occasion to decide the scope and effect of the provisions of the civil service law here involved. With respect thereto the court said:
“It is in no sense a guarantee to civil-service employees that they shall hold their offices if the duties imposed upon the heads of the departments are not complied with. It is, in effect, a rule established for the purpose of compelling *155 heads of departments to refrain from dismissing persons from office for insufficient, frivolous, or political reasons. And Congress by the act of August 24, 1912, sec. 6, 37 Stat. 555, adopted the principles embodied in said rule, and by making it a law made it possible to call to account any head of an executive department who may violate it.”
*****
“A duty is imposed upon the officer; but if he ignores it and removes a person from office, his action is not thereby illegal, nor is the removal rendered void and of no effect, nor can the person so removed claim that he has not been removed, and that he is entitled to continue in the office, to perform the services of the office, and to receive the compensation attached to it. As a matter of fact, he is removed; he ceases to be in the service of the United States, and his only remedy is to proceed without delay in a court of competent jurisdiction to try his right to the office. This the plaintiff did not do and never has done.”
The case seems to fall so completely within the rule laid down by the Supreme Court in the cases of Nicholas v. United States, 257 U. S. 71; Norris v. United States, Id. 77; and Eberlein v. United States, Id., 82, that further comment is unnecessary.
The plaintiff waited over thirteen months before filing his petition in this court, and the only reason he assigns for not seeking redress earlier in the courts is the fact that he experienced much uneasiness over the possibility of his reinstatement in the service and his immediate removal therefrom in accord with the civil service law, a proceeding previous adjudications as well as the letter of the Civil Service Commission to the Federal board duly warned him of.
The petition must be dismissed. It is so ordered.
GRAham, Judge; Hat, Judge; Downey, Judge; and Campbell, Chief Justice, concur.
On June 9, 1924, plaintiff’s motion for leave to file a motion for new trial was overruled, with the following
MEMORANDUM BY THE COURT
This case was before the court for a considerable time prior to January, 1924. On January 21, 1924, the petition was dismissed and an opinion filed. Subsequently the *156 plaintiff filed a motion for a new trial, accompanied by án extensive and exhaustive brief and argument in support thereof. We again Avent over the record and considered the motion, and after several weeks of consideration overruled the same. The plaintiff now files a third motion for a new trial, an unusual proceeding. In this third motion the allegation is made that he has recently come into knowledge of important testimony, which, if before the court, he verily believes would change its opinion and sets forth in detail the facts he expects to establish if allowed to produce and examine the witnesses. The plaintiff, being his own attorney and not in all respects familiar with the practice of the court, causes us to consider his last motion, whereas, as a rule, we would summarily overrule, it. To that end we have gone carefully into the facts hei now alleges as material and convincing, and we are unable to perceive that even if admitted the result would be different from what it is. The evidence now offered would merely accentuate the acute differences between parties concerned, differences we fully considered on the trial of the case, and not affect the issue from a legal standpoint. The case itself, in our view of the situation, falls within the rule announced and repeated in O'Neil v. United States, 56 C. Cls. 89; Mullan v. United States, 212 U. S. 516; Nicholas v. United States, 257 U. S. 71; Norris v. United States, Id. 77; Eberlein v. United States, Id. 82. The case in no respect differs from former adjudications on the same subject, and it would but prolong the controversy by allowing the motion.
The motion will be overruled. It is so ordered.