Luke B. HENRY

v.

The UNITED STATES.

No. 280-56.

United States Court of Claims.
July 12, 1957.

Donald M. Murtha, Washington, D. C., for plaintiff. Herbert S. Thatcher, Washington, D. C., was on the brief.

Thomas J. Lydon, South Portland, Me., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant. Herbert M. Canter, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

This is a suit to recover back pay which plaintiff, a veterans preference eligible, claims was denied him as a result of an alleged unlawful reduction in rank by the Veterans' Administration. Defendant moves for summary judgment dismissing the petition on the ground that there is no genuine issue as to any material fact and that as a matter of law defendant is entitled to judgment because

of plaintiff's failure to exhaust his administrative remedies and because of laches.

The facts alleged in the petition and documents submitted by the parties show that since sometime in 1946 plaintiff had served as Assistant Chief Attorney, Grade GS–12, in the Los Angeles Regional Office of the Veterans' Administration. Plaintiff's position was one of the three top legal positions in the regional office. The highest legal position was that of Chief Attorney, GS–13, and under that position was plaintiff's position of Assistant Chief Attorney, GS–12, and the position of Attorney Opinion Writer, also GS–12. Plaintiff alleged that one of the rights and privileges which attached to the position of Assistant Chief Attorney was that of promotion to the position of Chief Attorney with the right to enjoy any benefits which might arise from the reclassification of the position of Assistant Chief Attorney to a higher grade and salary.

On July 9, 1950, plaintiff was notified that effective that date he was to be reassigned to the position of Attorney Opinion Writer, GS–12. Plaintiff acquiesced and accepted this reassignment without objection, although plaintiff now alleges in his petition that the reassignment was part of a conspiracy by the officials of the Veterans' Administration to remove plaintiff from a position which made him eligible for promotion to the position of Chief Attorney, which latter position the officials knew was about to become vacant because of the serious illness of the then incumbent. From the

petition it also appears that the Chief Attorney had been seriously ill for a long time, and from other documents of record, plaintiff had, from time to time, served as Acting Chief Attorney in his place. Since plaintiff seems to have been aware of the impending probable vacancy in the position of Chief Attorney and also aware of the regulations which would enable him to qualify for promotion to such position from his position as Assistant Chief Attorney, one would have expected him to make some protest or objection to the reassignment. However, plaintiff did not attempt to exercise his right of an administrative appeal from the action of reassignment to the Civil Service Commission until April 30, 1952, approximately one year and 10 months after the reassignment which he had by then concluded was a demotion.[1]

In plaintiff's appeal to the regional office of the Civil Service Commission, plaintiff gave as an excuse for his failure to appeal within the required 10 days of the alleged reduction in rank in 1950, that he was "unaware of section 14" of the Veterans' Preference Act of 1944, and that he could not have appealed because he did not know of his right to appeal and was not informed of that right.

On May 14, 1952, the Regional Director of the Civil Service Commission wrote to plaintiff and advised him that he had not offered a sufficient justification for his delay in appealing. The Regional Director pointed out that late in 1949 plaintiff had addressed memoranda to the Manager of the Veterans' Administration Regional Office in Los Angeles

1. On March 10, 1952, plaintiff wrote to the President of the United States, stating that he had been reduced in rank without benefit of the procedures required by section 14 of the Veterans' Preference Act of 1944, 58 Stat. 390, as amended, 61 Stat. 723, 5 U.S.C.A. § 863, and that, in plaintiff's opinion, the regulations of the Civil Service Commission made no provision for an appeal under such circumstances. Plaintiff suggested that the regulations of the Commission be modified to provide for an appeal in a case such as his. This letter was referred to the Civil Service Commission which wrote to plaintiff on March 28, 1952, stating that the regulations regarding appeals in section 14 cases applied to cases such as his. Plaintiff was advised that while the regulations provided that appeals should be taken in 10 days, a longer delay might be excused under certain circumstances. On April 16, 1952, in reply to a further communication from plaintiff, the Commission suggested that plaintiff address an appeal under section 14 to the regional office of the Commission in San Francisco. Such an appeal was received on April 30, 1952.

concerning the appeal under section 14 of the Veterans' Preference Act of a Mr. William Deckard, who was an investigator in the Field Examination Section of the Chief Attorney's Office, in which office plaintiff was then Acting Chief Attorney; that on April 19, 1950, the chief of the Twelfth Region Classification Division fully discussed with plaintiff Deckard's third appeal under the provisions of section 14 from a reduction in rank. The Regional Director stated that in view of the fact that plaintiff was in 1949 and 1950 fully conversant with the provisions of section 14 of the Veterans' Preference Act, prior to the change in plaintiff's own assignment, it seemed unlikely that plaintiff was unaware of the provisions of section 14 when his reassignment took place on July 9, 1950. The Regional Director concluded that plaintiff had not offered an acceptable reason for the long delay in taking his appeal and that accordingly his appeal would not be considered.

Plaintiff took an appeal from the decision of the Regional Director to the Board of Appeals and Review of the Civil Service Commission in Washington, D. C., and on July 30, 1952, the decision of the Regional Director was affirmed.

On June 29, 1956, nearly six years after the effective date of the alleged reduction in rank, plaintiff filed his petition in this court alleging that his alleged reduction was brought about without compliance with the procedural requirements of section 14 of the Veterans' Preference Act and the regulations of the Civil Service Commission, and that the action was also arbitrary, capricious and unlawful and the result of a conspiracy.

The position of Assistant Chief Attorney which plaintiff had held prior to his reassignment in July 1950, was filled shortly after the reassignment, and in September 1950, the position of Chief Attorney became vacant and was filled.

In April 1952, the position of Assistant Chief Attorney was reclassified to grade GS–13 and the position of Chief Attorney was reclassified to grade GS–14. The position of Attorney Opinion Writer, held by plaintiff was not reclassified but remained grade GS–12.

The question of whether or not a plaintiff has exhausted his administrative remedies of appeal to the Civil Service Commission when he makes an appeal out of time and the Commission refuses to consider the appeal because not timely, was considered by the court in the recent decision in the case of McDougall v. United States, Ct.Cl., 149 F.Supp. 651. In that case the plaintiff appealed his dismissal as Deputy Collector of Internal Revenue within 10 days of his dismissal but in the appeal he alleged no procedural defects. The Civil Service Commission pointed out this omission, and suggested to plaintiff that if he wished to contest his removal on procedural grounds, he should submit copies of the initial and final notices of the removal action. It so happened that the removal notices were in fact defective procedurally, but plaintiff did not submit copies to the Commission. Some two years later plaintiff requested the reopening of his appeal despite the time element, and the Commission refused to consider his appeal because of the long delay in making it without a showing of any good reason for the delay. Under the circumstances of that case the court held that plaintiff had failed to exhaust his administrative remedies and dismissed the petition.

The logic of the McDougall case applies to the instant case. The only reason the instant plaintiff gave the Civil Service Commission for the long delay in taking his appeal, which Civil Service Commission regulations provide must be taken within 10 days of the effective date of the alleged adverse action,[2] was that

2. Section 22.4, Chapter 1, Part 22 of Title 5 of Code of Federal Regulations (1949 Ed.) provides in part as follows:
"*Appeals to the Commission; time limit.* The Commission will not entertain an appeal for consideration or review of any action under section 14 of the Veterans' Preference Act of 1944 prior to an adverse decision making effective the * * * reduction in rank * * *.

he was unaware of section 14 of the Veterans' Preference Act. In view of the facts and circumstances, we are no more impressed with that excuse than was the Civil Service Commission.[3] We are of the opinion that the Commission was fully justified in refusing to consider plaintiff's untimely appeal, and it follows that plaintiff has failed to exhaust his administrative remedies provided for in section 14 of the Act.

Defendant has also raised the matter of laches. Although it is not necessary for a disposition of the case to discuss this ground for dismissal, in view of the fact that plaintiff was asked to submit a supplemental memorandum on certain cases to which his counsel referred in oral argument, we shall discuss this defense.

Plaintiff urges that the defense of laches is not available in an action at law brought within the period specified in the applicable statute of limitation. United States v. Mack, 295 U.S. 480, 55 S.Ct. 813, 79 L.Ed. 1559; Kicklighter v. New York Life Insurance Company, 5 Cir., 145 F.2d 548; Safety Motors, Inc., v. Elk Horn Bank & Trust Co., D.C., 118 F.Supp. 872; State Mutual Life Assurance Company of Worcester, Mass. v. Heine, 6 Cir., 141 F.2d 741; and Everhart v. State Life Insurance Co., 6 Cir., 154 F.2d 347. All the cases relied on involved suits on different types of contracts, i. e., on bonds, on mortgages, on policies of life insurance, on sight drafts, and they do hold, as plaintiff urges, that unless equitable relief is sought by the plaintiff, the statute of limitations fixes the time limit for bringing suit. On the other hand we are referred by defendant to a long line of cases holding that in suits for reinstatement to a Government position and in suits for salary lost through wrongful removal from a Government position, laches may be interposed as a defense where the delay has caused the Government to change its position by hiring someone else to fill the job vacated by the claimant. In United States ex rel. Arant v. Lane, 249 U.S. 367, 39 S.Ct. 293, 63 L.Ed. 650, petitioner sought a writ of mandamus requiring the defendant to vacate an order dismissing petitioner from his Government employment and restoring him to such employment. The court held that while mandamus is classed as a legal remedy, it is a remedial process which is awarded not as a matter of right, but in the exercise of sound judicial discretion and upon equitable principles, and that it is subject to the equitable doctrine of laches. In that case the court found that during the two years which elapsed before plaintiff asserted his rights in court, another person had been hired and had been filling the position claimed by plaintiff and that the manifest inequity which would result from reinstating plaintiff, removing the other employee, and the consequent disruption to the service, made the application of the doctrine of laches appropriate in the interests of justice and sound public policy.

Nicholas v. United States, 257 U.S. 71, 42 S.Ct. 7, 66 L.Ed. 133, was a suit to recover the pay of a Government position accruing after the plaintiff's alleged unlawful removal from it without benefit of any of the procedural safeguards pro-

Ten (10) days after the effective date of the adverse decision shall be considered as a reasonable time to prepare and submit an appeal * * *. The time limit may be extended in the discretion of the Commission only upon showing by the employee that circumstances beyond his control prevented him from filing an appeal within the prescribed ten (10) days."

3. Section 14 of the Veterans' Preference Act of 1944, 5 U.S.C.A. § 863, provides that the appeal from an adverse agency decision must be filed with the Civil Service Commission "within a reasonable length of time after the date of receipt of notice of such adverse decision." Section 11 of the Act 5 U.S.C.A. § 860 authorizes the Commission to promulgate rules and regulations for the administration and enforcement of the Act. Regulation 22.4 quoted in part in footnote 2, was promulgated pursuant to section 11 to carry out the purposes of section 14.

vided for in the Lloyd-LaFollette Act of August 24, 1912, 37 Stat. 555, 5 U.S.C.A. § 652. Following the removal of plaintiff, another was appointed to fill his position, and for three years plaintiff took no steps to question the order dismissing him from the service or ask for a copy of the charges upon which he was removed. The Supreme Court held that the purpose of section 6 of the Lloyd-La-Follette Act was to require that a person in the classified civil service have an opportunity to know the charges against him before removal and an opportunity to answer those charges; that if a hearing was accorded him, it be one before the officer empowered to act in the matter. The Court then stated the issue as follows, 257 U.S. at page 75, 42 S.Ct. at page 9:

> " * * * The question presented is whether the plaintiff may recover his salary when removed without compliance with the statute, where he delays taking any steps to test the legality of his removal, or asking for an opportunity to be heard, for the length of time herein shown."

The Court held that a person illegally dismissed from office was not thereby exonerated from the obligation to take steps for his own protection and that he could not, for an unreasonable length of time, acquiesce in the order of removal, which it was within the power of his employer to make, and then recover for the salary attached to the position. Under such circumstances, the Court held that the employee may be considered to have abandoned title to the office and any right to recover its emoluments. The Court pointed out that public policy requires diligence on the part of the wronged employee not only to vindicate him, but also in the interests of the Government. Referring to the decision in United States ex rel. Arant v. Lane, supra, the Court noted that in that case a delay of twenty months amounted to laches barring the plaintiff's right to a

writ of mandamus restoring him to his Government position. The Supreme Court then stated at page 76 of 257 U.S., at page 9 of 42 S.Ct.:

> " * * * The reasoning of the opinion, and the comments as to the character of public employment and the conduct required of one who would assert his rights when wrongfully deprived of them, are apposite here. * * * "

The Supreme Court then held that plaintiff's lack of diligence evidenced an abandonment of his title to the office and of his right to recover the salary.

In Norris v. United States, 257 U.S. 77, 42 S.Ct. 9, 66 L.Ed. 136, a delay of eleven months in asserting the right to compensation for a wrongful removal from Government employment was held not to meet the requirement that plaintiff act with reasonable diligence in questioning his removal and seeking the compensation lost. In that case the eleven months' delay was in connection with plaintiff's protest to his employer that his removal had not been accomplished in the manner provided for in section 6 of the Lloyd-LaFollette Act. The Supreme Court noted that no satisfactory explanation was offered by plaintiff for the delay and the Court held that public policy required reasonable diligence on plaintiff's part in asserting his right to a position which the Government might well fill with another employee.

On the authority of the above three decisions the Court of Claims has dismissed a number of timely petitions seeking Federal pay, on the ground that the plaintiffs were guilty of laches. In Stager v. United States, 1922, 57 Ct.Cl. 116, the court assumed that the position from which plaintiff was wrongfully removed had been filled by another while plaintiff was doing nothing about his rights. See also Plunkett v. United States, 58 Ct.Cl. 359, and Morse v. United States, 59 Ct.Cl. 139.

Suits for Federal pay are actions at law, and the general rule is still that

the defense of laches is not available in an action at law brought within the applicable period of limitations. However, as noted above, the Supreme Court, has, for reasons of public policy, made an exception to this rule, first in a mandamus proceeding by a Federal employee seeking reinstatement in a Federal position after a wrongful discharge, and later in suits to recover Federal pay, where the delay in asserting statutory rights at the administrative level, or in bringing suit in the Court of Claims, has brought about changes in conditions which would render it unjust and inequitable to permit the plaintiffs to enforce their rights against the Government. In applying the doctrine of laches to suits for pay, the Supreme Court and this court have required that the Government establish the defense in the usual manner, and have held that mere delay in asserting rights is not sufficient to establish such a defense. Baxter v. United States, 122 Ct.Cl. 632; Winsberg v. United States, 98 F.Supp. 345, 120 Ct.Cl. 511; Kaufman v. United States, 93 F.Supp. 1019, 118 Ct.Cl. 91; Simon v. United States, 113 Ct.Cl. 182.

In the instant case the position of Assistant Chief Attorney from which plaintiff now claims he was wrongfully removed has been filled by another employee since shortly after plaintiff's removal, and that employee has been performing the duties and receiving the pay of the position. Plaintiff waited nearly two years before attempting to exercise his right of administrative appeal under the Veterans' Preference Act of 1944, and he was unable to satisfactorily explain his long delay in taking such action. Thereafter, upon the refusal of the Civil Service Commission to extend the ten-day time limit for appeal provided for in its regulations, plaintiff waited nearly four years before bringing suit in this court to recover the pay lost because of the alleged wrongful reduction in rank. In the meantime, plaintiff apparently acquiesced in the reassignment to the position of Attorney Opinion Writer although, since the summer of 1952, that position has carried a lower grade than the position of Assistant Chief Attorney from which plaintiff claims he was wrongfully demoted in 1950. We are of the opinion that under the facts and circumstances of this case, and in the light of the decisions of the Supreme Court and this court, discussed above, plaintiff has been guilty of laches.

Defendant's motion for summary judgment is granted and the petition is dismissed.

It is so ordered.

JONES, Chief Judge, and LARA-MORE, MADDEN and WHITAKER, Judges, concur.