ColliNS, Judge,
delivered the opinion of the court:
More than 5y2 years prior to the commencement of this suit plaintiffs were removed from their positions as civilian employees of the Department of the Army. In tiffs action, they allege both procedural and substantive irregularities in their removal proceedings and, upon these grounds, they base their present claims to back pay.
Plaintiffs are all veterans’ preference eligibles, who, at the time of their removals, were in the excepted service, work *31 ing for the Department of the Army in Japan. On March 2, 1956, each of the six was tried by a general conrt-martial, convened at Tokyo, Japan.[1] The charges involved a conspiracy to unlawfully purchase and dispose of whiskey and the acceptance, from other than authorized personnel, of military payment certificates.[2] Additionally, plaintiffs Shaw, Jenkins, and Mosakowski were charged with attempted subornation of perjury.
Both the purchase and disposition of whiskey and the use of the military payment certificates were matters which were defined and controlled by published Army regulations.[3] Under article 92 of the Uniform Code of Military Justice, the violation of a regulation was a punishable offense.[4] Con *32 spiring to commit an offense was specified under article 81 as a separate punishable act.[5]
Based upon evidence showing their participation in the illegal sale of alcoholic beverages to Japanese citizens, each plaintiff was found guilty of violating articles 81 and 92. The charge of attempting to secure perjured testimony (punishable under article 134 of the Uniform Code of Military Justice) was sustained only as to plaintiff Jenkins. Plaintiffs Jackson and Washington were sentenced to a year’s confinement and fined $1,500 each. Shaw and Smith also received 1-year sentences and were fined $1,000 each. Mos-akowski was fined $2,500 and was given a 1-year term, and Jenkins was sentenced to a 2-year term and fined $1,000.[6]
These sentences, which were approved by the convening authority on April 12, 1956, were reviewed, along with the record, by an Army Board of Review. This body’s approval of the findings and the sentences was handed down on June 27,1956. Further review was sought before the United States Court of Military Appeals. On September 11 and November 21, 1956, the United States Court of Military Appeals denied plaintiffs’ petitions for a grant of review of the Board of Review’s decisions.
The proceedings removing plaintiffs from their positions were instituted contemporaneously with the court-martial proceedings. Plaintiffs were informed of their proposed removals through advance notices sent to them on April 5, 1956. In the case of plaintiff Smith, his notice was dated March 30, 1956. These notices set forth, as grounds for the proposed removals, essentially the same charges that had been *33 lodged against them in the court-martial proceedings. Although each was advised of his right to respond to these charges, plaintiffs Smith and Washington did not do so. The others did respond. Shortly after the court-martial convictions were affirmed by the convening authority, plaintiffs were advised of their removals. In the case of plaintiffs Jackson, Jenkins, and Washington, their terminations became effective on May 31, 1956. Plaintiffs Mosakowski, Shaw, and Smith were removed as of June 7,1956.
The appellate remedies open to them were specifically pointed out. Each was advised of his right either to request review of the removal decision within 15 days under the grievance procedures provided by the Department of the Army’s civilian personnel regulations or, as veterans’ preference eli-gibles, to process an appeal within 10 calendar days to the United States Civil Service Commission (hereinafter the “Commission”). With the exception of plaintiff Jackson— whose appeal was rejected for lack of timeliness[7] — the remaining plaintiffs availed themselves of their procedural rights to Commission review.
Pursuant to the regulations governing its review procedures, the Commission advised plaintiffs of their entitlement to a hearing. It was pointed out that, should they be unable to secure their release from confinement, attendance at the hearing could be accomplished through a designated representative. Only plaintiff Washington requested a hearing. However, his request for a stay of the proceedings in order to permit his personal attendance was denied. Therefore, in each case, the Commission conducted its review on the basis of the documentary record.
The Commission’s adjudication of the cases resulted in affirmation of the removal actions. Plaintiffs were advised accordingly by letters dated September 18, 1956 (and September 28, 1956, in plaintiff Washington’s appeal). Each *34 was also informed that further action on the claim would require submission of an appeal, within 7 days, to the Commission’s Board of Appeals and Beview. None of the plaintiffs pursued this further avenue of administrative relief.
Although plaintiffs did seek further review of their court-martial convictions by way of a petition for retrial, submitted to the Judge Advocate General in 1957, action on their present back pay claims was not instituted until January 1960. It was at this time that plaintiffs filed an action in the United States District Court for the District of Columbia (Sub nom. Smith v. Bruckner, Civil Action No. 129-60), wherein they sought, inter alia, declaratory relief voiding their convictions, return of the fines that had been imposed, and restoration to their positions.
On November 21,1960, the district court, in reliance upon the Supreme Court’s then recent pronouncements in Grisham v. Hagan, 361 U.S. 278 (1960), and McElroy v. United States ex rel. Guagliardo, 361 U.S. 281 (1960), ordered that:
* * * The partial summary judgment to which the plaintiffs are entitled is a judgment for declaratory relief that under the doctrines established by the decisions of the Supreme Court in Kinsella v. Singleton, 361 U.S. 234 (1960), Grisham v. Hagan, 361 U.S. 278 (1960), McElroy v. Guagliardo, 361 U.S. 281 (1960), and Wilson v. Bohlender, 361 U.S. 281 (1960), the court-martial trying, convicting and imposing sentence upon the plaintiffs as specified in the pleadings was an unconstitutional exercise of court-martial jurisdiction over the plaintiffs, as civilian employees of the Army in time of peace, and the convictions and sentences imposed thereunder were void. The remaining prayers of the plaintiffs for relief further appearing to the Court as being beyond its jurisdiction, the motion for summary judgment in all particulars other than the declaratory relief herein specified must be denied. The above appearing to the Court, it is by the Court this ?Ast day of November, 1960,
ORDERED and declared that the trial, sentence, and conviction of the plaintiffs, as civilian employees of the Army in time of peace, by the court-martial specified by the complaint in this cause were an unconstitutional exercise of court-martial jurisdiction and were void; and it is
*35 FurthbR Ordered that summary judgment for the plaintiffs in all other particulars requested be and the same hereby is denied.
Invalidation of the court-martial action was appealed by the United States on January 10, 1961. On June 16, 1961, the appellate court entered a per curiam order dismissing the appeal; the present suit was not commenced until May 29, 1962.
As a basis for recovery in this suit, plaintiffs assert the following: First, they challenge their removals on eviden-tiary grounds. Specifically, their position is that the Commission should not have upheld the validity of their removals since the only evidence which was offered in support of the charges consisted of certified copies of their court-martial convictions. In light of this, they attack the Commission’s action and label its determination devoid of substantial evidence. As a second ground, they claim that, even if the Commission had been correct in relying entirely upon the court-martial convictions for its proof of the removal charges, nevertheless its determinations may no longer stand because the convictions have since been invalidated. The key to this argument is the assumption that the 1960 Supreme Court decisions,[8] striking down all peacetime military jurisdiction over civilian overseas personnel, must be given full retroactive application. And finally, plaintiffs argue a procedural irregularity stemming from the alleged denial of their right to a personal appearance before the Civil Service Commission.
The Government has met these arguments foursquare. But, in addition to its defense on the merits, it takes the affirmative position that plaintiffs are barred from any recovery either (1) because of their failure to have exhausted available administrative remedies or (2) because of their long delay in bringing suit in the Court of Claims. The affirmative defenses are well taken.
Though advised of their rights of appeal to the Civil Service Commission’s Board of Appeals and Beview, plain *36 tiffs elected not to avail themselves of this potential avenue of redress. On this score alone — their failure to exhaust administrative remedies — 'the claims would demand rejection. Pine v. United States, 178 Ct. Cl. 146, 371 F. 2d 466 (1967). But even if we were to embrace plaintiffs’ argument and, in this instance, carve out an exception to the “exhaustion doctrine” on the grounds of the special circumstances involved (plaintiffs’ confinements in Japan), that exception would do no more than expose a further — and this time insurmountable barrier — their long delay in bringing suit in this court.
Recognition of the laches doctrine as an appropriate defense to a back pay claim is a matter to which this court has long acceded. Henry v. United States, 139 Ct. Cl. 362, 366-70, 153 F. Supp. 285, 288-90 (1957); Nicholas v. United States, 55 Ct. Cl. 188 (1920), aff'd, 257 U.S. 71 (1921). Now accorded formal status in the Rules of the United States Court of Claims (see Rule 19(b)), the application of laches to civilian Federal service pay claims found its first expression in United States ex rel. Arant v. Lane, 249 U.S. 367 (1919). Since then, its application has been consistently endorsed. See authorities cited in Alpert v. United States, 161 Ct. Cl. 810, 821 (1963).
While traditionally confined to equity proceedings, use of the laches concept in the area of pay litigation finds its justification on the ground that public policy demands diligence in the prosecution of erroneous dismissal actions. As stated in Nicholas v. United States, supra, 257 U.S. at 75:
We agree with the Court of Claims that a person illegally dismissed from office is not thereby exonerated from obligation to take steps for his own protection and may not for an unreasonable length of time acquiesce in the order of removal, which it was within the power of the Secretary to make, and then recover for the salary attached to the position. * * *
Plaintiffs in this case waited for more than 3 years, after final administrative action had been taken, before attempting to secure any judicial relief on their pay claims. And discounting their respective periods of confinement, they permitted from 2% to 3 years to elapse. They permitted another *37 11 y2 months to elapse between the time the district court’s action was finalized on appeal and the commencement of the present suit. In our judgment, these facts fully support the Government’s position that plaintiffs’ claims should not now be examined on the merits.
In their attempt to hurdle the laches barrier, plaintiffs contend that such a defense is wholly inappropriate where, as here, the facts reveal their consistent endeavors to overcome the court-martial convictions. This argument builds in the wrong direction.
Their present claims for back pay are related to their criminal convictions only in the sense that each claim was premised upon common factual elements, i.e., an identity in the charges against them. But apart from this single common consideration, their claims — one alleging erroneous conviction, the other erroneous discharge from Federal service— relate to entirely separate transactions, presenting distinct and independent legal issues which were redressable through separate procedures. The very contention now presented recognizes this separateness. Thus, the lack of substantial evidence, which plaintiffs cite as a separate ground for invalidation of their dismissals, was a valid ground of attack, always open to them, in no sense dependent upon their first securing a reversal of the court-martial convictions, and— most importantly — a ground that could have been presented for our consideration more than 5 years ago. Measured by these considerations, the degree of diligence, which back pay claims demand, has clearly not been satisfied.
On the other hand, were we to treat the back pay claim as an inseparable component of the criminal conviction, plaintiffs would gain little through this union. While it is true that they did petition the Judge Advocate General in 1957 for rehearing on the court-martial convictions, the fact remains that this was a wholly unnecessary step; it was purely a permissive remedy rather than a mandatory one and, consequently, it fails to demonstrate that degree of diligence which a claim for back pay demands. See Gersten v. United States, 176 Ct. Cl. 633, 635-36, 364 F. 2d 850, 852 (1966); Alpert v. United States, supra at 823.
*38 For our purposes, the significant fact is that full relief was available at all times to plaintiffs in this forum. Thus, accepting the hypothetical proposition that total relief required invalidation of the court-martial conviction — that relief, if merited, could have been obtained in this court. See Shaw v. United States, 174 Ct. Cl. 899, 357 F. 2d 949 (1966). Hence, whether one views the present claims as wholly independent of their criminal counterparts or simply as opposites of the same coin, plaintiffs, in either situation, fall prey to their own delays. No matter how viewed, plaintiffs find themselves without sufficient explanation for the more than 3 years that intervened between the date of final administrative action (September 1956) and their appearance in a court of law (United States District Court for the District of Columbia, January 1960). During that time, they did little more than process an unnecessary step (an appeal to the Judge Advocate General), one neither essential to the exhaustion of any administrative remedies relating to their claims nor essential to the jurisdiction of either the district court or this court.
The fact that plaintiffs were successful in overturning their court-martial convictions does not cast their present pay claims in a different light. It does not demand that this court now ignore their prior lack of diligence. In particular, would we hold to this view where, as here, the facts show that plaintiffs permitted another 18 months to elapse between the date of the district court’s order of November 21, 1960 (holding that it had no jurisdiction to grant them job restoration) , and the commencement of suit in the Court of Claims on May 29, 1962. Considering the length of time that had already elapsed by that date, their failure to proceed more promptly, after the district court’s action, was an unwarranted aggravation of a much delayed claim.
Plaintiffs do not allege that they were unaware that this was the proper forum for their back pay claims. They have offered nothing by way of justification or excuse for the delays that ensued. On these facts, we hold that plaintiffs are barred by laches. Accordingly, defendant’s motion for summary judgment is granted, plaintiffs’ cross-motion for summary judgment is denied, and the petition is dismissed.

 Military jurisdiction over civilian employees was premised upon the uniform Code of Military Justice, 10 U.S.C. §§ 801-935 (1964). In 1956 and prior to its amendment, article 2, which defines “Persons subject to the Code,” provided in part the foUowing (ch. 169, 64 Stat. 109 (1950)) :
“(11) Subject to the provisions of any treaty or agreement to which the united States is or may be a party or to any accepted rule of international law, all persons serving with, employed by, or accompanying the armed forces without the continental limits of the united States and without the following territories: That part of Alaska east of longitude one hundred and seventy-two degrees west, the Canal Zone, the main group of the Hawaiian Islands, Puerto Rico, and the Virgin Islands.”

 This certificate (referred to as “MPC”) was the designated medium of exchange for all Army personnel, civilian and military, stationed in the Par East.

 AR 35-510, Foreign Financial Operations, Nov. 1, 1951, 32 C.F.R. § 536.80(d) (1951), provided that use of the military payment certificate was restricted entirely to United States authorized personnel and that,
“(d) Under no circumstances wiU authorized personnel or disbursing oflicers accept military payment certificates from, transfer military payment certificates to, or exchange military payment certificates for persons other than authorized United States personnel, or accept or exchange military payment certificates after the date designated by the Secretary of the Army * * * for their acceptance or exchange.”
Like the military payment certificate, the use and disposition of alcoholic beverages was likewise restricted to United States authorized personnel. Army Forces Far East Circular No. 69, Control of Beverage Sales, Mar. 19, 1953, prohibited—
“a. Sale, gift, barter, donation or other disposition of alcoholic beverages to any individual under 21 years of age or to persons not authorized by this directive to purchase alcoholic beverages.”

 Article 92 of the Uniform Code of Military Justice, ch. 169, 64 Stat. 136 (1950) (now 10 U.S.C. § 892 (1964)), provided:
“Any person subject to this code who—
(1) violates or fails to obey any lawful general order or regulation; or
(2) having knowledge of any other lawful order issued by a member of the armed forces, which it is his duty to obey, fails to obey the same; or
(3) is derelict in the performance of his duties;
shall be punished as a court-martial may direct.”

 Article 81 of tRe uniform Code of Military Justice, ch. 169, 64 Stat. 134 (1950) (now 10 U.S.C. § 881 (1964)), provided:
“Any person subject to tRis code wRo conspires witR any otRer person or persons to commit an offense under tRis code sRall, if one or more of the conspirators does an act to effect tRe object of tRe conspiracy, be punished as a court-martial may direct.”

 Plaintiffs Smith and Shaw were released at the expiration of their sentences (after allowance for good behavior) on December 21, 1956, and December 27, 1956, respectively. Jackson and Washington were released on November 20, 1956, and Jenkins on March 7, 1957 — each Raving been granted a remission of his sentence on grounds of general clemency. As to Mosakow-ski, his failure to Rave paid the $2,500 fine within the period of his 1-year confinement resulted in an extension of his term — this as called for by the original sentence. However, in August 1957, upon his Raving paid the fine in full, Re was granted parole.

 Plaintiff Jackson's appeal was postmarked July 3, 1956. Inasmuch as this was well beyond the 10-day appeal period, the Civil Service Commission requested, from Jackson, further information concerning the reasons or the circumstances accounting for his untimely filing. Although he was advised that an explanation would be necessary in order to permit any action on his claim, Jackson did not respond. On August 23, 1956, he was advised that his case had been closed because of his failure to prosecute.

 Kinsella v. United States ex rel. Singleton, 361 U.S. 234 (1960); Grisham v. Hagan, 361 U.S. 278 (1960); McElroy v. United States ex rel. Guagliardo, 361 U.S. 281 (1960); and Wilson v. Bohlender, 361 U.S. 281 (1960).