### AMERICAN WESTERN CORPORATION, Appellant,

v.

### The UNITED STATES, Appellee.

### Appeal No. 83–1277.

United States Court of Appeals, Federal Circuit.

March 28, 1984.

should stop". *See McCandless v. Great Atlantic and Pacific Tea Company,* 697 F.2d 198, 201 (7th Cir.1983).

Gale Fisher, Sioux Falls, S.D., for appellant.

Joan M. Blumberg, Washington, D.C., for appellee. With her on brief were J. Paul McGrath, Asst. Atty. Gen. and David M. Cohen, Director, Washington, D.C.

Before BENNETT, Circuit Judge, SKELTON, Senior Circuit Judge, and MILLER, Circuit Judge.

SKELTON, Senior Circuit Judge.

This case involves the construction of a contract between the General Services Administration (GSA) and the American Western Corporation (appellant). On August 22, 1980, GSA awarded a requirements contract to appellant to supply polyethylene plastic bags for the Government for the period from August 22, 1980, to July 30, 1981. The contract contained an Economic Price Adjustment (EPA) clause which pro-

vided that the "price(s) of all items which are purchased under this contract are subject to price adjustment, upward or downward" based upon a formula contained in the clause. The clause provided that, while appellant had to submit a written request for a price adjustment upward, the Government could unilaterally obtain a price reduction. The clause did not fix a time for requesting an increase or for asserting a decrease in prices.

Subsequent to the award of the contract, the Government began placing purchase orders with appellant. After shipping these orders, appellant would submit invoices to the Government based on the original contract prices. All of the purchase orders issued under the contract were shipped, and the Government paid the final invoice on November 17, 1981.

On November 3, 1981, two weeks before the final payment was made, the contracting officer notified appellant that some of the bags shipped under the contract were defective and would have to be replaced under the terms of a Quality Approved Manufacturer's Agreement between the parties. Negotiations ensued which ultimately resulted in a modification of the contract which was executed on May 10, 1982. This modification called for a refund of five percent of the contract price by appellant. Appellant remitted the money owed under the modification on June 18, 1982, and, in addition, offered $8,000 to settle for other defective bags discovered after November 3, 1981.

Prior to the contract's official July 30, 1981, termination date, the price of PE resin—a raw material used in manufacturing polyethylene bags—declined to a point which entitled GSA to obtain a price reduction under the EPA clause. The Government failed to realize this at the time, however, and thus made final payment according to the original contract prices. On or about December 15, 1981, the GSA Inspector General notified the contracting officer that the Government could have obtained a price reduction under the EPA clause. The contracting officer decided to obtain a ret-

roactive price reduction by requesting a refund from appellant, and on December 31, 1981, GSA notified appellant of its intention to adjust the contract price downward. In a final decision dated March 17, 1981, the contracting officer demanded payment from appellant in the amount of $22,521.08. The appellant appealed to the GSA Board of Contract Appeals, which upheld the Government's claim in a 2 to 1 decision.

Appellant initially contends that the Board erred in failing to find that the EPA clause is ambiguous with respect to the time in which the Government must assert its right to a decrease. Because of this alleged ambiguity, appellant argues that we must adopt its construction of the clause, i.e., that the Government may not claim a price reduction after full performance of the contract. We cannot accept appellant's interpretation of the EPA clause because, after careful consideration, we fail to find any ambiguity in the contract. It very clearly states the relative rights of the parties in obtaining price adjustments, and establishes a formula for determining the amount of adjustment available. It merely fails to set a time limit within which the Government must claim a reduction in price. Omission of an express time provision does not of itself create an ambiguity.

Appellant points to certain provisions in the EPA clause that allegedly imply that price adjustments can be made only during the contract period. The clause states, for example, that the price indexes used to determine price adjustments shall be "the indexes for the third, sixth; and ninth succeeding months of the contract period." This provision is directed to the method for determining the amount of adjustment. It clearly was not inserted for the purpose of establishing a time limit for asserting a price reduction and should not be given such an effect. We are unable to find any provision in the EPA clause which could reasonably be construed to impose a time limit on the Government for asserting its right to a price reduction. In the absence of such a time limit, the courts will imply a

reasonable time. See, Nager Electric Co., Inc. v. United States, 177 Ct.Cl. 234, 368 F.2d 847, 864 (1966); Roberts v. United States, 174 Ct.Cl. 940, 357 F.2d 938, 946 (1966); Merritt-Chapman & Scott Corp. v. United States, 174 Ct.Cl. 250, 355 F.2d 622, 627 (1966).

The amici, American Transparents Plastic Corporation and Chicago Transparent Products, Inc., argue that final payment by the Government bars the assertion of a claim by either party to a Government contract. As authority for this proposition, the amici cite the cases of Gulf & Western Industries, Inc. v. United States, 226 Ct.Cl. 159, 639 F.2d 732 (1980), and Dubois Construction Corp. v. United States, 120 Ct.Cl. 139, 98 F.Supp. 590 (1951).

In Gulf & Western the contract contained a Changes clause which provided that the contracting officer could receive and act upon any claim asserted prior to final payment, if the facts justified such action. The court denied the contractor's claim challenging defective specifications because the claim was not made until after final payment. The decision was clearly based upon the language in the Changes clause, which set forth an express time limit. This was also the case in Jo-Bar Mfg. Corp. v. United States, 210 Ct.Cl. 149, 535 F.2d 62 (1976), cited by the court in Gulf & Western.

In Dubois the Government's counterclaim for defective work by the contractor was barred because it was not asserted until after full performance and final payment. The contract in that case contained a Disputes clause which required all disputes concerning questions of fact to be decided by the contracting officer. The court's denial of the Government's claim was clearly based upon the Government's failure to follow the procedure set out in the Disputes clause.

The final payment rule enunciated in the above cases was predicated upon express contractual provisions. In the instant case no such provisions are found in the agreement. The contract simply contains a pro-

vision allowing the Government to make a unilateral price adjustment, with no express time limit. In such case, the final payment rule does not apply. As the Court of Claims stated in *Nager Electric, supra:*

> Those specific clauses (Disputes clauses) usually have built-in time limits, and where no specific period is established in the contract the contractor (or Government) cannot delay unreasonably. 368 F.2d at 864.

This rule was applied in *Roberts v. United States, supra,* where the contract stated simply that when a change causes a decrease in the amount due on the contract, "equitable adjustment shall be made." The court held that this provision imposed a duty upon the contracting officer to "make such an adjustment within a reasonable time." 357 F.2d at 946.

The issue, then, resolves itself into a determination of whether the Government acted within a reasonable time in adjusting the contract price downward. Both the parties and the Board look to the *Roberts* case to make this determination. *Roberts* held that the adjustment should be made within such a time as to allow the contractor an opportunity to appeal (1) while the facts supporting the claim are readily available and (2) before the contractor's position is prejudiced by final settlement with his subcontractors, suppliers, and other creditors. If the adjustment is not made within a reasonable time, the Government may be held to be estopped by an act of waiver. There is no problem here with (1) because the facts supporting a claim for price adjustment under the EPA clause are readily available by reference to a monthly publication of the U.S. Department of Labor, and to the formula set out in the contract. However, under (2) the appellant asserts that it was prejudiced by the Government's claim asserted six weeks after final payment because it had distributed some of the proceeds from the contract as bonuses to employees. It also claims prejudice from the fact that it will have to file corrected financial statements with the SEC if the Government's claims are allowed, and be-

cause appellant will be exposed to potential lawsuits from investors who relied upon the inaccurate financial statements.

To begin with, as appellant concedes, bonus payments to employees are not the same as the payments to subcontractors and creditors contemplated in *Roberts.* There is no evidence of record that appellant was legally obligated to pay bonuses to its employees, as would be the case of payments to creditors. Additionally, appellant was aware of the price fluctuations in the cost of PE resin, as the Board found. Although it was under absolutely no obligation to inform the Government of these changes, it at least knew that there was a possibility that the GSA might make a claim for a price reduction. It was also aware before final payment on November 17, 1981, that the Government was asserting a claim based upon defective bags. It, therefore, knew that it might eventually receive less than the original contract price. Without calling the prudence of appellant into question for paying the bonuses, it is clear that it might have avoided its predicament by waiting until all disputes concerning the contract were settled before making the bonus payments. Moreover, the cost of filing a corrected financial statement with the SEC does not rise to the level of prejudice contemplated by *Roberts.* Inconvenience does not equal prejudice. Finally, the possibility of suits by disgruntled investors is too speculative to afford a basis for a finding of prejudice. We hold that the appellant was not prejudiced by the Government's assertion of a claim for price adjustment on December 31, 1981, and that the Government's claim was, therefore, made within a reasonable time.

We have considered the remaining contentions of appellant and the amici, and have determined that they are without merit. The decision of the GSA Board of Contract Appeals entitling the Government to recoup its overpayment of $22,521.08 is affirmed.

AFFIRMED.