**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

KARI FISHER,

    Appellant,

    v.

DEPARTMENT OF THE TREASURY,

    Agency.

DOCKET NUMBER
DC-1221-22-0004-W-1

DATE: August 10, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Sabastian S. Piedmont</u>, Esquire, Syracuse, New York, for the appellant.

<u>Byron D. Smalley</u>, Esquire, and <u>Davina Minnix</u>, Washington, D.C., for the
 agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**REMAND ORDER**

¶1   The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review,

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

VACATE the initial decision, and REMAND the case to the Washington Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2 The appellant is employed as a GS-14[2] Attorney in the agency's Office of Chief Counsel. Initial Appeal File (IAF), Tab 1 at 1; Tab 16 at 23-24. On October 3, 2021, the appellant filed the instant IRA appeal alleging that she had been subjected to several personnel actions in retaliation for her protected whistleblowing disclosures and activities and requesting a hearing on her appeal. IAF, Tab 1 at 1-4. With her initial appeal, the appellant provided a copy of a close-out letter from the Office of Special Counsel (OSC) dated July 29, 2021. *Id.* at 6-7.

¶3 The administrative judge issued an IRA Jurisdictional Order in which she apprised the appellant of the applicable law and burden of proof requirements for an IRA appeal and ordered her to submit evidence and argument establishing Board jurisdiction. IAF, Tab 3 at 1-7. The administrative judge also directed the appellant to file a statement detailing each of her alleged protected disclosures or activities, numbered and in chronological order, and each personnel action she was subjected to, also numbered and in chronological order, along with an explanation for how she exhausted each specific claim with OSC. *Id.* at 7-9.

¶4 After the parties submitted their jurisdictional pleadings, IAF, Tabs 14-18, the administrative judge issued an initial decision concluding that the appellant failed to make a nonfrivolous allegation that she made a protected disclosure or engaged in protected activity that was a contributing factor in the agency's decision to take a personnel action against her. IAF, Tab 21, Initial Decision (ID)

---

[2] The appellant's initial appeal identifies her position's occupational series as "GS-9," and her grade as "14." Initial Appeal File (IAF), Tab 1 at 1. Other pleadings make clear that she currently occupies a GS-14 Attorney position with the agency. Petition for Review File, Tab 1 at 6.

at 1-7. Specifically, the administrative judge acknowledged the appellant's allegations that she made numerous disclosures during the period from 2001 through 2017 but observed the appellant did not file her OSC complaint until nearly 20 years after the first purported disclosure, in January 2021. ID at 4. Noting the significant length of the delay, and crediting the agency's argument that it was prejudiced by the appellant's delay in seeking corrective action, the administrative judge concluded that the purported disclosures and retaliatory personnel actions the appellant alleged she was subjected to during the period from 2001 through 2017 were barred by the equitable doctrine of laches. ID at 4-5.

¶5 Addressing the appellant's alleged protected activities, the administrative judge acknowledged that the appellant submitted a grievance under the agency's collective bargaining agreement in 2017, several equal employment opportunity (EEO) complaints from 2017 through 2021, an Occupational Safety and Health Administration (OSHA) complaint in 2021, a complaint with the Office of Government Ethics in 2021, and a complaint to several U.S. Senators in October 2021. ID at 6. However, she noted that the Board's expanded IRA jurisdiction under the Whistleblower Protection Enhancement Act of 2012 (WPEA) covers claims arising under 5 U.S.C. § 2302(b)(9)(A)(i) (which concerns protected activity seeking to remedy a violation of 5 U.S.C. § 2302(b)(8)), but not those arising under 5 U.S.C. § 2302(b)(9)(A)(ii). ID at 6. Reviewing the substance of the appellant's complaints, the administrative judge concluded that they did not concern remedying violations of section 2302(b)(8). ID at 6-7. Consequently, she concluded that the appellant also failed to nonfrivolously allege that she engaged in any protected activity and dismissed the appeal for lack of jurisdiction. ID at 6-7.

¶6 The appellant has timely filed a petition for review of the initial decision, arguing that the administrative judge erred in concluding that she failed to nonfrivolously allege that she engaged in any protected activity that was a

contributing factor in any personnel action and in concluding that her protected disclosures during the period from 2001 through 2017 were barred by the doctrine of laches. Petition for Review (PFR) File, Tab 1 at 25-29. The agency has filed a response in opposition to the petition for review. PFR File, Tab 4. The appellant has filed a reply. PFR File, Tab 5.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶7    The Board has jurisdiction over an IRA appeal if the appellant has exhausted her administrative remedies before OSC and makes nonfrivolous allegations that: (1) she made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action. *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016). The Board generally treats OSC exhaustion as a threshold determination before considering whether the appellant's claims constitute nonfrivolous allegations of protected disclosures or protected activities. *See Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶¶ 4-5 (2014) (stating that the first element to Board jurisdiction over an IRA appeal is exhaustion by the appellant of her administrative remedies before OSC and that the next requirement is that she nonfrivolously allege that she made a protected disclosure or engaged in protected activity). Accordingly, we will first consider whether the appellant exhausted her administrative remedy with OSC and, if that threshold requirement is met, then consider whether she made nonfrivolous allegations that she made a protected disclosure or engaged in a protected activity that was a contributing factor to an agency personnel action. *See Salerno*, 123 M.S.P.R. 230, ¶ 5.

<u>The appellant failed to establish that she exhausted her administrative remedies with OSC regarding some of the challenged personnel actions.</u>

¶8    To satisfy the exhaustion requirement of 5 U.S.C. § 1214(a)(3), an appellant must have provided OSC with a sufficient basis to pursue an investigation into her allegations of whistleblower reprisal. *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10. Generally, exhaustion can be demonstrated through the appellant's initial OSC complaint, evidence the original complaint was amended (including but not limited to OSC's determination letter and other letters from OSC referencing any amended allegations), and the appellant's written responses to OSC referencing the amended allegations. *Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 8 (2011). Alternatively, exhaustion may be proved through other sufficiently reliable evidence, such as an affidavit or declaration attesting that the appellant raised with OSC the substance of the facts in her appeal. *Chambers*, 2022 MSPB 8, ¶ 11. The purpose of requiring an appellant to exhaust her remedies with OSC before filing an IRA appeal with the Board is to give OSC "the opportunity to take corrective action before involving the Board in the case." *Id.* Thus, "the Board's jurisdiction over an IRA appeal . . . is . . . limited to those issues that have been previously raised with OSC." *Id.*

¶9    In the initial decision, the administrative judge did not make any specific findings concerning which of the appellant's claims she exhausted with OSC, but she appears to have implicitly concluded that the appellant exhausted all of the claims contained in the appellant's amended jurisdictional response. ID at 3; IAF, Tab 16 at 4-16. That response contains a numbered chronological list of 27 disclosures during the period from October 2001 through April 2021, 13 protected activities during the period from January 2016 through June 2021, and various personnel actions the appellant was subjected to during the period from 2006 through 2021, including 45 specific vacancy announcements for which she applied but was not selected. *Id.* at 7-16.

¶10     In a July 29, 2021[3] letter summarizing its investigation, OSC noted that it sent the appellant a preliminary determination letter stating that it did not have sufficient context to evaluate the over 800 emails the appellant submitted as a part of her OSC complaint and requested that the appellant produce a timeline of her allegations.  IAF, Tab 16 at 51.  The appellant eventually produced the requested timeline and provided it to OSC, and OSC considered it in conducting its investigation.  *Id.*  In a separate close-out letter also dated July 29, 2021, OSC identified the protected disclosures and activities it investigated in connection with the appellant's complaint.  IAF, Tab 1 at 6.  The letter also identified numerous personnel actions the appellant alleged the agency subjected her to since 2008, including threatening discipline, undertaking efforts to have her involuntarily committed or resign/retire from her position, negative performance appraisals from 2017 through 2021, a letter of counseling, denied leave and telework requests, and nonselections for positions.  *Id.*

¶11     Importantly, in the close-out letter, OSC identified 37 specific positions for which the appellant alleged she had applied but was not selected since 2008, listed by the position vacancy announcement number and the year the position was posted.  *Id.* at 6 n.1.  Most of the 37 vacancies OSC identified are the same ones the appellant identified in the "Timeline of [prohibited personnel practices] and Whistleblowing" document she provided in her amended jurisdictional response.  *Compare id.*, *with* IAF, Tab 16 at 87-88, 103-04.  However, the following eight nonselection positions were included on the appellant's timeline, as numbered, but were not among those that OSC identified that it investigated as a part of the appellant's complaint:  (7) CCSH-11-09 (Assistant to the Branch Chief Detail – 2010); (10) Detail Positions (Two) with the ITA Front Office

[3] The letter is dated July 29, 2020, but it is clear from the context that is a typographical error and the letter should instead be dated July 29, 2021.  *See* IAF, Tab 1 at 6-7 (identifying July 29, 2021, as the date OSC closed its investigation).

Executives (Announced January 28, 2021); (11) CCJD-21-28 (Assistant to the Branch Chief Detail – 2021); (12) CCJD-21-139 (Assistant to the Branch Chief Detail – 2021); (1) CCTW-07-77 (General Tax Attorney, PSI - 2006); (30) CCJD-20-D57 (FO Tax Law Specialist – 2020); (31) CCJD-21-16 (B4 Senior Counsel – 2021); (32) CCJD-21-37 (B4 and B5 STRs – 2021). *Compare* IAF, Tab 1 at 6 n.1, *with* Tab 16 at 87-88, 103-04.

¶12     The appellant also did not identify her nonselection for those vacancy announcements as retaliatory personnel actions in her OSC complaint, nor did she provide any of the over 800 emails she apparently provided to OSC detailing her complaints. IAF, Tab 16 at 19-49. Additionally, the appellant acknowledged that she continued to update the timeline document after OSC issued its close out letter, and the version of the timeline document she submitted to the record includes references to events that took place well after she filed her initial complaint with OSC, so it is unclear whether she raised with OSC all of the claims she listed on the timeline below. IAF Tab 16 at 56 n.1, 79-84.

¶13     To establish Board jurisdiction over a claim, the appellant must prove exhaustion with OSC by preponderant evidence, not just present a nonfrivolous allegation of exhaustion. 5 C.F.R. § 1201.57(c)(1). Additionally, the exhaustion requirement in 5 U.S.C. § 1214(a)(3) for an IRA appeal precludes the Board from considering a personnel action that was not brought to OSC's attention. *Mason*, 116 M.S.P.R. 135, ¶ 8. Based on the record before us, we conclude that the appellant exhausted her claims that she was subjected to the following personnel actions identified in OSC's close-out letter: a hostile work environment; threats of reassignment and/or removal; denials of leave and telework requests; negative performance appraisals from 2017 through 2021; a letter of counseling; and nonselection for the 37 positions identified in OSC's letter. IAF, Tab 1 at 6-7. However, we conclude that the appellant failed to demonstrate that she exhausted with OSC her claims that she was not selected for the following vacancy announcements identified in her amended jurisdictional response, but not

included in OSC's letter: (7) CCSH-11-09 (Assistant to the Branch Chief Detail – 2010); (10) Detail Positions (Two) with the ITA Front Office Executives (Announced January 28, 2021); (11) CCJD-21-28 (Assistant to the Branch Chief Detail – 2021); (12) CCJD-21-139 (Assistant to the Branch Chief Detail – 2021); (1) CCTW-07-77 (General Tax Attorney, PSI - 2006); (30) CCJD-20-D57 (FO Tax Law Specialist – 2020); (31) CCJD-21-16 (B4 Senior Counsel – 2021); (32) CCJD-21-37 (B4 and B5 STRs – 2021).

¶14     Unlike the exhaustive review of all the personnel actions OSC investigated, OSC's letter does not specifically address all 27 alleged disclosures and 13 alleged protected activities during the period from October 2001 through June 2021 that the appellant identified in her jurisdictional response, and instead generally references a number of these claims and notes that the appellant's allegations spanned her "20-year career as an attorney at the IRS." IAF, Tab 16 at 7-12, 51-54. Additionally, although the appellant's complaint to OSC also does not include an exhaustive list of these purported disclosures and activities, it does identify a number of these claims and make reference to the fact that additional details regarding the protected disclosures and activities were provided to OSC in a supplemental document. *Id.* at 44-48. Thus, between the appellant's OSC complaint and OSC's letter confirming that the appellant supplemented her initial complaint with the timeline document that includes each of the claims contained in her amended jurisdictional response, we find that the appellant exhausted the 27 alleged disclosures and 13 alleged protected activities listed in her amended jurisdictional response.[4] *Id.* at 7-12; *see Chambers*, 2022 MSPB 8, ¶ 11; *Mason*, 116 M.S.P.R. 135, ¶ 8.

_____

[4] We note that the administrative judge appears to have considered a letter dated October 12, 2021, that the appellant sent to several U.S. Senators as a potential protected disclosure or activity. ID at 6; IAF, Tab 11 at 11-15. However, this letter is dated after OSC issued its close-out letter on July 29, 2021, and so the appellant could

<u>The administrative judge correctly determined that some of the appellant's claims are barred by the equitable doctrine of laches.</u>

¶15    The appellant argues on review that the administrative judge erred in concluding that her protected disclosures were barred by the doctrine of laches. PFR File, Tab 1 at 28-29.  She argues that to invoke laches, the agency must demonstrate both that the appellant's delay was unreasonable and that it was materially prejudiced by the appellant's delay, and the agency cannot establish either condition in this case.  *Id.* at 28-29.  Specifically, she argues that despite the agency's assertion that witnesses have retired or left the agency and thus are unavailable, the fact that witnesses have retired does not, alone, establish that they are unavailable.  *Id.* at 28.  She also asserts that the agency's argument that it would be prejudiced due to the unavailability of documents related to the appellant's claims is conclusory and the agency has not adequately demonstrated that documents were actually lost and that it is prejudiced.  *Id.* at 28-29.  The appellant further argues that her delay in filing the appeal was caused by her belief and reassurances from agency management that the issues she disclosed were being remedied.  *Id.*  Finally, she argues that laches is an equitable defense and therefore it is premature to apply laches at the jurisdictional stage.  *Id.* at 28.

¶16    The equitable defense of laches bars an action when an unreasonable delay in bringing the action has prejudiced the party against whom the action is taken. *Johnson v. U.S. Postal Service*, 121 M.S.P.R. 101, ¶ 6 (2014).  The Board has acknowledged that laches may apply as a defense in an IRA appeal and may be applied before reaching the merits of the appeal.  *Brown v. Department of the Air Force*, 88 M.S.P.R. 22, ¶¶ 3, 7-10 (2001).  The party asserting laches must prove both unreasonable delay and prejudice.  *Johnson*, 121 M.S.P.R. 101, ¶ 6.  Under laches, the mere fact that time has elapsed from the date a cause of action first

_____

not have exhausted her administrative remedies for this claim.  IAF, Tab 1 at 6-7, Tab 11 at 11-15.

accrued is not sufficient to bar suit; rather, the delay must be unreasonable and unexcused. *Cornetta v. United States*, [851 F.2d 1372](#), 1377-78 (Fed. Cir. 1988). There are two types of prejudice that may stem from a delay in filing suit. *Id.* at 1378. The first type, defense prejudice, concerns the Government's ability to mount a defense due to the loss of records, destruction of evidence, fading memories, or unavailability of witnesses. *Id.* The second type, economic prejudice, centers on consequences, primarily monetary, to the Government should the appellant prevail. *Id.*

¶17     In the initial decision, the administrative judge credited the agency's argument that it was prejudiced by the appellant's unreasonable delay in requesting corrective action because the appellant's disclosures span a more than 20 year period and many of the employees the appellant identified in connection with her disclosures have long since retired or left the Federal Government and are unavailable, and even if the agency were able to locate the individuals, it was likely that their recollections of these events had faded. ID at 5. In making this finding, however, the administrative judge did not distinguish between the appellant's older disclosures and retaliatory personnel actions and her more recent claims.

¶18     Reviewing the appellant's disclosures, we agree with the administrative judge's finding that Disclosures 1 through 11, dating to the period from 2001 through early 2014, are barred by laches. IAF, Tab 16 at 7-9; ID at 4-5. The most recent of those disclosures occurred at least 6 years before the appellant filed her request for corrective action with OSC in January 2020. IAF, Tab 16 at 96; *see Mercer v. Department of Health and Human Services*, [82 M.S.P.R. 211](#), ¶ 11 (1999) (concluding that the length of the delay is, for purposes of applying laches, based on the date of the last pertinent event in that case, which was when OSC terminated its investigation and not when the appellant's Board appeal rights first vested). The Board and the U.S. Court of Appeals for the Federal Circuit have regularly found similar delays to be unreasonable and applied laches to bar

such claims. *See Pepper v. United States*, [794 F.2d 1571](), 1573-74 (Fed. Cir. 1986) (stating that a 6-year delay was inexcusable in concluding that the claim was barred by laches); *Brown*, [88 M.S.P.R. 22](), ¶¶ 3, 8-10 (2001) (finding a 6-year delay to be unreasonable and applying the doctrine of laches to bar an IRA appeal); *but see Social Security Administration v. Carr*, [78 M.S.P.R. 313](), 330 (1998) (finding that a 3 1/2-year delay was not unreasonable based on the specific facts of that case), *aff'd*, [185 F.3d 1318]() (Fed. Cir. 1999); *Special Counsel v. Santella*, [65 M.S.P.R. 452](), 465–66 (1994) (finding that OSC's 3-year delay in bringing a disciplinary action was not unreasonable).

¶19     Additionally, the agency has offered specific arguments to support its assertion that it is prejudiced by the appellant's delay, noting that the subjects of most of the early disclosures have either long since retired or left the agency, and in some instances have left the country. IAF, Tab 15 at 8. The agency also notes on review that the appellant did not first file any grievance or EEO complaint until August 2017, and so prior to that date the agency would not have been on notice that it needed to flag and retain files in anticipation of potential litigation. PFR File, Tab 4 at 12-13. Conversely, the appellant has not offered any reasonable explanation for her lengthy delay, stating only that she was relying on assurances from agency management that the issues disclosed were being remedied. PFR File, Tab 1 at 29.

¶20     As the appellant correctly notes, a witnesses' retirement does not, alone, establish her unavailability for the purposes of establishing prejudice. PFR File, Tab 6 at 10-11; *see Pueschel v. Department of Transportation*, [113 M.S.P.R. 422](), ¶ 8 (2010). However, the unavailability of many of the potential witnesses, coupled with the likely loss of relevant documents and records, and the likelihood of faded memories related to these events is sufficient to establish that the agency would be prejudiced by the appellant's significant and unexplained delay. *Johnson*, [121 M.S.P.R. 101](), ¶ 9 (finding that the unavailability of some relevant witnesses, coupled with the loss of documents that could refresh their

recollections of events, was sufficient to establish prejudice against the agency based on the appellant's 8-year delay in filing her appeal); *cf. Hoover v. Department of the Navy*, 957 F.2d 861, 862-64 (Fed. Cir. 1992) (declining to apply laches despite a 5-year delay in filing a petition for enforcement, where the agency failed to submit sufficient specific evidence to support its assertion of prejudice).

¶21      The same is true of the nonselections that occurred prior to 2017. In its jurisdictional response, the agency produced a sworn declaration from the Branch Chief of the Classification and Benefits Branch attesting to the agency's document retention policy. IAF, Tab 15 at 27-29. As outlined in the policy, the agency destroys records related to job vacancies, including applications, resumes, vacancy candidate lists and ratings, certificates of eligibles, interview records and notes, job offer acceptances/declinations, and more within 2 years after the vacancy is closed by a hire or nonselection. *Id.* at 27-28. The agency also destroys excepted service appointment records for filling permanent or temporary vacancies within 5 years after a candidate enters on duty, is no longer under consideration, or declines an offer. *Id.* at 28-29. Consequently, despite the appellant's assertion otherwise, the agency has produced sufficient evidence demonstrating that it is no longer in possession of many of the relevant records related to the nonselections that occurred prior to 2017, and so the agency has also demonstrated that it would be prejudiced by the appellant's delay in seeking corrective action related to these claims. *See Johnson*, 121 M.S.P.R. 101, ¶¶ 4, 8-9 (agreeing with the administrative judge's finding that the appellant's claims were barred by laches based, in part, on the agency's uncontested assertion that it was prejudiced because the relevant documents were likely destroyed pursuant to the agency's 5-year document retention policy).

¶22      In sum, we agree with the administrative judge that the agency has produced sufficient evidence to demonstrate that it would be unreasonably prejudiced by the appellant's significant unexplained delay in seeking corrective

action related to Disclosures 1 through 11, encompassing the period from October 2001 through early 2014, and so those claims are barred by the doctrine of laches. IAF, Tab 16 at 7-9. However, we conclude that the administrative judge erred in finding that Disclosures 12 through 27, encompassing the period from August 2014 through April 2021, were also barred by laches. IAF, Tab 16 at 9-10. The agency also established that it would be unreasonably prejudiced by the appellant's unexplained delay in seeking corrective action related to the following nonselection personnel actions, as numbered in the appellant's amended response: (1) CCNH-15-55 (Assistant to the Branch Chief Detail – 2015); (3) CCVL-16-50 (Assistant to the Branch Chief Detail – 2016); (4) Detail Position of Technical Advisor, Office of the Special Counsel, National Taxpayer Advocate (Announced February 3, 2014); (5) Detail Position of Technical Advisor, Office of the Special Counsel, National Taxpayer Advocate (Announced August 14, 2014); (6) Detail Positions (Two) with the Division Counsel, Wage & Investment (Announced July 15, 2014); (8) CCLO-08-90 (Assistant to the Branch Chief Detail – 2008); (2) CCCM-ERB-12-64 (B1 Branch Chief - 2012); (3) CCJL-ERB-13-55 (Special Counsel, Litigation - 2013); (4) CCJL-ERB-13-72 (B2 Senior Counsel - 2013); (5) CCNF-ERB-15-23 (B5 STR - 2015); (6) CCCM-ERB-14-36 (B6 Senior Counsel - 2014); (7) GS-ERB-10-51 (B2 STR – 2010); (8) CCCM-ERB-16-20 (B2 Branch Chief – 2016); (9) CCCM-ERB-16-46/52 [announced twice] (B1 STR – 2016); (10) & (11) GS-ERB-09-24 (B5 & B7 STR – 2009); (12) CCNF-ERB-16-08 (B5 STR – 2015); (13) GS-ERB-10-34 (B6 STR – 2010); (14) & (15) CCNF-ERB-15-13 (2 Special Counsels – 2015); (16) CCCM-ERB-16-11 (Special Counsel – 2016); (17) CCNF-ERB-15-33 (B7 Senior Counsel – 2015); (18) CCCM-ERB-16-27 (B5 Senior Counsel – 2016). IAF, Tab 16 at 14-15. Each of these vacancies was announced at least 5 years ago, and the agency has indicated that the relevant documents for the vacancies were destroyed in conformity with its document retention policy. *See Johnson*, 121 M.S.P.R. 101, ¶¶ 4, 8-9.

<u>The appellant made nonfrivolous allegations that she made at least one protected disclosure or engaged in at least one protected activity and was subjected to at least one covered personnel action.</u>

*The appellant nonfrivolously alleged that the agency took at least one personnel action against her.*

¶23    In cases such as this one, when the appellant has alleged multiple personnel actions, the Board has jurisdiction when the appellant exhausts her administrative remedies before OSC and makes a nonfrivolous allegation that at least one alleged personnel action was taken in reprisal for at least one alleged protected disclosure. *Usharauli v. Department of Health and Human Services*, 116 M.S.P.R. 383, ¶ 19 (2011). As previously discussed, the appellant exhausted her administrative remedies before OSC and is not barred by laches from raising the following personnel actions taken against her in reprisal for her protected disclosures or activities: she was threatened with discipline, including reassignment or removal; she received lowered performance appraisals from 2017 through 2021; she was issued a letter of counseling; her leave and telework requests were denied; and the agency failed to select her for the identified positions advertised after 2017. *See supra* ¶ 22.

¶24    Regarding the appellant's claim that she was threatened with reassignment or removal, it is well established that a threatened personnel action is a covered personnel action under the WPEA. IAF, Tab 16 at 79 (noting that she was threatened with termination following a written counseling in October 2019, and again threatened with termination in January 2020); *see Rebstock Consolidation v. Department of Homeland Security*, 122 M.S.P.R. 661, ¶ 10 (2015) (explaining that the term "threaten" in 5 U.S.C. § 2302 should be interpreted broadly and can encompass warnings of possible future discipline). A negative performance evaluation is also a personnel action for purposes of an IRA appeal. 5 U.S.C. § 2302(a)(2)(A)(viii); IAF, Tab 16 at 76, 78-79, 80 (stating that she was issued derogatory performance reviews in 2017-2020).

¶25    Additionally, a counseling memorandum can constitute a threatened personnel action when it warns of future discipline. IAF, Tab 16 at 79 (noting that the appellant was counseled verbally and in writing and was threatened with termination in October 2019); *see Campo v. Department of the Army*, 93 M.S.P.R. 1, ¶¶ 7-8 (2002). A denial of annual leave can constitute a decision concerning benefits, and thus constitute a personnel action for purposes of an IRA appeal. IAF, Tab 16 at 79 (noting that in January 2020, the appellant was denied advanced annual and medical leave); *see Marren v. Department of Justice*, 50 M.S.P.R. 369, 373 (1991). A cancelation of a telework agreement can constitute a personnel action under 5 U.S.C. § 2302(a)(2)(A)(xii) to the extent that it represents a significant change in working conditions. IAF, Tab 16 at 79 (noting that in October 2019, management altered the appellant's ability to telework); *see Rumsey v. Department of Justice*, 120 M.S.P.R. 259, ¶ 23 (2013). A nonselection is also a personnel action for the purposes of an IRA appeal. IAF, Tab 16 at 14-15 (identifying the list of positions the appellant was not selected for in retaliation for her protected disclosures and activities); *see Ruggieri v. Merit Systems Protection Board*, 454 F.3d 1323, 1327 (Fed. Cir. 2006).

¶26    Finally, a "hostile work environment" may establish a personnel action in an IRA appeal only if it meets the statutory criteria under 5 U.S.C. § 2302(a)(2)(A), i.e., constitutes a significant change in duties, responsibilities, or working conditions. *See Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶¶ 16-18. Although the Board has held that the "significant change" personnel action should be interpreted broadly to include harassment and discrimination that could have a chilling effect on whistleblowing or otherwise undermine the merit system, only agency actions that, individually or collectively, have practical and significant effects on the overall nature and quality of an employee's working conditions, duties, or responsibilities will be found to constitute a personnel action covered by section 2302(a)(2)(A)(xii). *Id*, ¶ 16. In determining whether a hostile work environment is present, the Board

will consider the totality of the circumstances, including agency actions that may not individually rise to the level of a personnel action. *Id.*, ¶ 18. In *Skarada*, the Board found that an appellant nonfrivolously alleged he was subjected to a personnel action when an agency excluded him from meetings and conversations, subjected him to multiple investigations, accused him of fabricating data violating the Privacy Act, refused his request for a review of his position for possible upgrade, yelled at him on three occasions, and failed to provide him the support and guidance needed to successfully perform his duties. *Id.*, ¶ 18.

¶27 Here, the appellant has provided an extensive list of wrongful actions she alleges were undertaken by the agency from 2014 onward that she claims amount to a hostile work environment, including, for example, the following: she was recorded, listened to on phone lines, and spied on at the worksite; other employees used her timesheets; she was consistently subjected to harassment, gossip, and false rumors about her physical characteristics and features; she was falsely accused of being in sexual relationships with agency supervisors; she was accused of being "crazy"; she was sexually harassed and stared at; she was professionally sabotaged; she was mocked and intimidated; she was accused of holding certain political views; and she was subjected to unnecessary background investigations. IAF, Tab 16 at 9-10, 69-70, 73-74, 79, 88-93.

¶28 Based on the existing record, we find that the appellant's contentions regarding her hostile work environment claim, if accepted as true, collectively amount to a nonfrivolous allegation of a significant change in working conditions. *See Skarada*, 2022 MSPB 17, ¶ 18; *see also Sistek v. Department of Veterans Affairs*, 955 F.3d 948, 955 (Fed. Cir. 2020) (noting that retaliatory investigations are not personnel actions in and of themselves, but such investigations may contribute towards "a significant change in working conditions" that can arise to the level of a personnel action); *Spivey v. Department of Justice*, 2022 MSPB 24, ¶ 10; *Covarrubias v. Social Security Administration*, 113 M.S.P.R. 583, ¶¶ 8, 15 n.4 (2010) (finding that the appellant made a nonfrivolous allegation of a

significant change in working conditions when she alleged, among other things, that her supervisors harassed her and closely monitored her whereabouts, to include following her to the bathroom), *overruled on other grounds by Colbert v. Department of Veterans Affairs*, 121 M.S.P.R. 677, ¶ 12 n.5 (2014).

¶29    In summary, after careful review, we conclude that the appellant nonfrivolously alleged that she was subjected to the following personnel actions: (1) threats of discipline, including reassignment or removal; (2) lowered performance appraisals from 2017 through 2021; (3) a letter of counseling; (4) denial of leave; (5) denial of telework; (6) a significant change in her working conditions; and (7) nonselection for the following positions as numbered in her amended jurisdictional response:  (2) CCVL-17-09 (Assistant to the Branch Chief Detail – 2017); (9) CCKM-19-65 (Assistant to the Branch Chief Detail – 2019); (1) CCCM-ERB-17-21 (B7 STR - 2017); 19) CCCM-ERB-18-06 (B3 Branch Chief - 2018); (20) CCCM-ERB-18-46 (B4 Branch Chief – 2018); (21) & (22) CCCM-ERB-18-38 (2 Special Counsels – 2018); (23), (24) & (25) CCCM-ERB-18-39 (B1, B2, & B3 STR – 2018); (26), (27) & (28) CCCM-ERB-18-53 (B1, B2, and B7 Senior Counsels – 2018); (29) CCCM-ERB-18-78 (B4 STR – 2018).  As to the appellant's remaining nonselection claims, as previously noted, the appellant either failed to exhaust them or they are barred by laches.  *Supra* ¶¶ 13, 22.

> *The appellant failed to nonfrivolously allege that she made a protected disclosure or engaged in protected activity in connection with Disclosures 16, 17, 18, 19, 20, 21, and 24, and Protected Activities 7, 8, and 9.*

¶30    A nonfrivolous allegation of a protected whistleblowing disclosure is an allegation of facts that, if proven, would show that the appellant disclosed a matter that a reasonable person in his position would believe evidenced one of the categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8).  *Salerno*, 123 M.S.P.R. 230, ¶ 6.  The test to determine whether a putative whistleblower has a reasonable belief in the disclosure is an objective one:  whether a

disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the agency evidenced a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Id*.

¶31    The remaining disclosures that are not barred by the doctrine of laches are Disclosures 12 through 27. IAF, Tab 16 at 9-10, 69-84. Disclosures 18, 19, 20, 21, and 24 concern EEO complaints the appellant filed during the period from December 2017 through February 2021. IAF, Tab 16 at 10, 75-78, 80-81. The Board recently reaffirmed that filing an EEO complaint is a matter relating solely to discrimination and is not protected by 5 U.S.C. § 2302(b)(8). *Edwards v. Department of Labor*, 2022 MSPB 9, ¶¶ 10-13, 20, 22-23, *aff'd*, No. 2022-1967, 2023 WL 4398002 (Fed. Cir. July 7, 2023); *see Williams v. Department of Defense*, 46 M.S.P.R. 549, 554 (1991). Further, there is no indication in the record that the substance of her EEO complaints sought to remedy a violation of 5 U.S.C. § 2302(b)(8). The appellant did not provide copies of the EEO complaints or a detailed description of the contents of the complaints below, and what little information she did provide about the complaints indicates that they do not concern remedying a violation of whistleblower reprisal under 5 U.S.C. § 2302(b)(8).

¶32    Instead, the EEO complaints, as described by the appellant, concerned her personal objections to various employment matters, such as lowered performance ratings, reduced credit hours and telework opportunities, and denied promotions. IAF, Tab 16 at 75-78, 80-81, 85-86. Consequently, the appellant has failed to nonfrivolously allege that she made a protected disclosure or engaged in protected activity in connection with these claims. *Cf. Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 7 (2013) (recognizing that under the WPEA, the Board's jurisdiction in IRA appeals was expanded to cover claims of

reprisal for EEO complaints in which the appellant sought to remedy whistleblower reprisal).

¶33        Similarly, Protected Activities 7, 8, and 9 concern step 1 and step 2 grievances the appellant filed related to lowered performance ratings, discrimination, and her nonselection for a position.  IAF, Tab 16 at 11, 75, 84. None of the appellant's grievances concerned remedying a violation of whistleblower reprisal under 5 U.S.C. § 2302(b)(8), and so the Board lacks IRA jurisdiction over these activities.  *See Young v. Merit Systems Protection Board*, 961 F.3d 1323, 1329 (Fed. Cir. 2020) (stating that "[s]ection 2302(b)(9)(A)(ii), which is not included in the list of prohibited personnel practices for which the Board can issue corrective action, covers retaliation for exercising any appeal, complaint, or grievance right other than one seeking to remedy a violation of section 2302(b)(8)[,] [r]etaliation for filing those other types of complaints is remediable through different mechanisms, and not by an IRA appeal to the Board"); *Mudd*, 120 M.S.P.R. 365, ¶ 7.  Accordingly, we conclude that the appellant failed to nonfrivolously allege that the Board has jurisdiction over these grievances.[5]

---

[5] The appellant identifies Disclosures 16 and 17 as her filing of union grievances on these same issues.  IAF, Tab 16 at 10.  Accordingly, we need not separately consider these claims.

*The appellant made a nonfrivolous allegation of a protected disclosure in connection with Protected Activity 3.[6]*

¶34    For Protected Activity 3, the appellant alleges that in 2016, she reported to her manager that a secretary in her branch made an unauthorized disclosure of taxpayer information.  IAF, Tab 16 at 11, 73.  The appellant also alleged that she was obligated to disclose the unauthorized disclosure of taxpayer information.  Under section 6103(a) of the Internal Revenue Code (IRC), 26 U.S.C. § 6103(a), it is unlawful for any officer or employee of the United States to willfully disclose taxpayer information to any unauthorized person, and violators can be subject to criminal penalties.  I.R.C. § 6103; *see Payne v. United States*, 289 F.3d 377, 378-79 (5th Cir. 2002); *United States v. Chemical Bank*, 593 F.2d 451, 457 (2d Cir. 1979).  Additionally, section 7431 of the IRC, 26 U.S.C. §§ 7431(a)-(c), authorizes affected taxpayers to bring a civil action for damages based on the unlawful disclosure of taxpayer information.  I.R.C. § 7431; *see Lampert v. United States*, 854 F.2d 335, 336 (9th Cir. 1988).  Therefore, the appellant could have reasonably believed that she was disclosing a violation of law in connection with her reporting of an agency secretary's purportedly unlawful disclosure of taxpayer information.  *See Schlosser v. Department of the Interior*, 75 M.S.P.R. 15, 21 (1997) (concluding that an appellant could establish a reasonable belief that he made a protected disclosure by showing that he was familiar with the alleged illegal conduct and was therefore in a position to form such belief, and

---

[6] As previously discussed, the appellant demonstrated that she exhausted this disclosure with OSC.  *Supra* ¶ 14.  We recognize that the appellant identified this disclosure as a protected activity.  IAF, Tab 16 at 11.  To the extent she was asserting that her disclosure was protected under 5 U.S.C. § 2302(b)(9)(C) as a disclosure to an agency "component responsible for internal investigation or review," we disagree.  Congress expanded protected activities to include such disclosures in December 2017; however, that expansion is not retroactive.  *Edwards*, 2022 MSPB 9, ¶¶ 29-33.  In any event, we find, as discussed here, that the appellant nonfrivolously alleged that she made a protected disclosure.  For the sake of consistency with the appellant's designation, we have continued to refer to her disclosure as "Protected Activity 3."

that his belief was shared by other similarly situated employees). Consequently, we conclude that the appellant nonfrivolously alleged that Protected Activity 3 is a disclosure protected under 5 U.S.C. § 2302(b)(8)(A)(i). *See Hupka v. Department of Defense*, 74 M.S.P.R. 406, 410-11 (1997) (concluding that a disclosure of a potential Privacy Act violation can constitute a protected disclosure); *Zygmunt v. Department of Health and Human Services*, 61 M.S.P.R. 379, 382 (1994) (same).

<u>The appellant nonfrivolously alleged that Protected Activity 3 was a contributing factor in the agency's decision to take a personnel action.</u>

¶35        To satisfy the contributing factor criterion at the jurisdictional stage, an appellant need only raise a nonfrivolous allegation that the fact or content of her disclosure or protected activity was one factor that tended to affect the personnel action in any way. *See Salerno*, 123 M.S.P.R. 230, ¶ 12. Whether the appellant's allegations can be proven on the merits is not part of the jurisdictional inquiry. *Lane v. Department of Homeland Security*, 115 M.S.P.R. 342, ¶ 12 (2010).

¶36        One way to establish this criterion is the knowledge/timing test, under which an appellant may nonfrivolously allege that the disclosure or activity was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure or activity, and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action. 5 U.S.C. § 1221(e)(1); *see Salerno*, 123 M.S.P.R. 230, ¶ 13. With regard to the knowledge prong of this test, an appellant may establish, for jurisdictional purposes, that a disclosure or activity was a contributing factor in a personnel action by nonfrivolously alleging that the official taking the personnel action had actual or constructive knowledge of the disclosure or activity. *See Wells v. Department of Homeland Security*, 102 M.S.P.R. 36, ¶ 8 (2006). Regarding the timing portion of the test, the Board has held that a personnel action taken within approximately 1 to 2 years of an

appellant's disclosures satisfies the timing prong. *See Skarada*, 2022 MSPB 17, ¶ 19 (observing that a personnel action taken within approximately 1 to 2 years of the appellant's disclosure satisfies the timing factor of the knowledge/timing test); *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 21 (2015) (same). Additionally, for the timing prong the relevant inquiry is the time between when the agency official taking the action had actual or constructive knowledge of the disclosure or activity—not necessarily the date of the disclosure or activity itself—and the time that the action was taken. *See Wells*, 102 M.S.P.R. 36, ¶ 8.

¶37    The appellant alleged that immediately after she disclosed the potential unauthorized disclosure of taxpayer information to her manager, the manager and her "co-worker friends" retaliated against her by subjecting her to a hostile work environment, including by sexually harassing her, spying on her, monitoring her, and misusing their official positions by holding case files that she needed in order to perform her duties for extended periods of time. IAF, Tab 16 at 73; *see Skarada*, 2022 MSPB 17, ¶ 18; *Covarrubias*, 113 M.S.P.R. 583, ¶¶ 8, 15 n.4. Based on the foregoing, we conclude that the appellant has nonfrivolously alleged that at least one protected disclosure or protected activity was a contributing factor in the creation of a hostile work environment that constituted a significant change in her working conditions.

We remain the appeal for the administrative judge to further develop the record and make new findings on the issue of jurisdiction.

¶38    As previously discussed, the administrative judge erred by determining that all of the appellant's purported disclosures and personnel actions during the period from 2001 through 2017 were barred by laches—even those that occurred within 6 years of the date the appellant filed her complaint with OSC. *Supra* ¶ 22. We also determined that the appellant failed to nonfrivolously allege that Disclosures 16, 17, 18, 19, 20, 21, and 24, and Protected Activities 7, 8, and 9, are within the Board's IRA jurisdiction. *Supra* ¶¶ 30-33. However, because the administrative judge dismissed all of the appellant's disclosures as barred by

laches, including those that occurred after 2014, she did not make any findings concerning whether the appellant nonfrivolously alleged that she made a protected disclosure with respect to any of the remaining claims. Further, although the administrative judge generally determined that the appellant's 2017 grievance, 2017 through 2021 EEO complaints, 2021 complaint to OSHA, and 2021 complaint to the OGE were not protected activities because they did not concern remedying a violation of whistleblower reprisal under 5 U.S.C. § 2302(b)(8), the analysis of these claims was cursory and did not offer any details about the nature of the appellant's specific claims in each complaint or address the individual claims with any degree of specificity.[7] ID at 6-7; IAF, Tab 16 at 19-49, 69-84.

¶39    Based on our review of the record, we have concluded that the appellant nonfrivolously alleged that she made at least one protected disclosures with respect to Protected Activity 3 and nonfrivolously alleged that she was subjected to at least one personnel action when she was subjected to a retaliatory hostile work environment that caused a significant change in her working conditions.[8] The Board's ordinary practice is to make a jurisdictional finding in an IRA appeal based on the parties' written submissions. *See Spencer v. Department of the*

---

[7] Additionally, a number of these complaints appear to concern disclosures of information under 5 U.S.C. § 2302(b)(8) as opposed to appeals, complaints, or grievances under 5 U.S.C. § 2302(b)(9). *See* 5 U.S.C. §§ 2302(b)(8) (identifying categories of "disclosures" of information protected under that section), 2302(b)(9) (identifying types of activities protected under that section).

[8] Due to how complex and numerous the appellant's claims are, our discussion here is limited to addressing our ultimate inquiry which is whether she has established jurisdiction over her claims; that is, whether she has nonfrivolously alleged that at least one protected disclosure or activity was a contributing factor in at least one personnel action. *See Skarada*, 2022 MSPB 17, ¶ 13 (explaining that, in cases when an appellant has alleged multiple personnel actions, the Board has jurisdiction over the appeal when the appellant exhausts her administrative remedy and makes a nonfrivolous allegation that at least one alleged personnel action was taken in reprisal for at least one alleged protected disclosure).

*Navy*, [327 F.3d 1354](#), 1356 (Fed. Cir. 2003); *Shope v. Department of the Navy*, [106 M.S.P.R. 590](#), ¶ 5 (2007). In certain circumstances, however, the Board has remanded the appeal for the administrative judge to further develop the record on the issue of jurisdiction and to issue a new jurisdictional finding. *See Wilcox v. International Boundary and Water Commission*, [103 M.S.P.R. 73](#), ¶¶ 15-16; *Wells*, [102 M.S.P.R. 36](#), ¶¶ 4, 9-10.

¶40      Additionally, an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and her legal reasoning, as well as the authorities on which that reasoning rests. *Spithaler v. Office of Personnel Management*, [1 M.S.P.R. 587](#), 589 (1980). Given the extensive nature of the appellant's claims and the fact that the administrative judge's laches findings precluded a full review of the allegations the appellant exhausted with OSC, we remand the appeal for the administrative judge to make new jurisdictional findings. On remand the administrative judge shall make new findings concerning whether the appellant nonfrivolously alleged that she made a protected disclosure or engaged in protected activity in connection with the following claims that are not bared by laches, as identified in the appellant's amended jurisdictional response: Disclosures 12, 13, 14, 15, 22, 23, 25, 26, and 27, and Protected Activities 1, 2, 4, 5, 6, 10, 11, 12, 13. The administrative judge shall subsequently make findings concerning whether the appellant nonfrivolously alleged that these disclosures or activities were a contributing factor in the agency's decision to take, fail to take, or threaten to take any of the previously identified personnel actions. *Yunus v. Department of Veterans Affairs*, [242 F.3d 1367](#), 1371 (Fed. Cir. 2001); *Salerno*, [123 M.S.P.R. 230](#), ¶ 5. If the administrative judge determines that the appellant established Board jurisdiction over her IRA appeal, she is entitled to a hearing on the merits of her claim, which she must prove by preponderant evidence. *Salerno*, [123 M.S.P.R. 230](#), ¶ 5. If the appellant proves by preponderant evidence that a protected disclosure or activity

was a contributing factor in one of the personnel actions, the administrative judge shall order corrective action unless the agency proves by clear and convincing evidence that it would have taken the same actions absent the protected activity. *Id.*; *see* 5 U.S.C. § 1221(e).

**ORDER**

¶41      For the reasons discussed above, we remand this case to the Washington Regional office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:                /s/ for
                                      Jennifer Everling
                                      Acting Clerk of the Board

Washington, D.C.